Your Honors, may it please the Court, my co-counsel John McHugh at the council table. Your Honors, in Avera v. Secretary, this Court abrogated the former hometown rule for governing attorney fees in Vaccine Act cases and held that henceforth the load star in Vaccine Act cases would be calculated according to prevailing market rates in the Forum District, which this Court defined as the District of Columbia, unless there is a very significant difference between D.C. rates and rates in the Attorney's Home District, known as the, quote, Davis exception, unquote. The critical question in this case, Your Honor, is this. Under Avera, what constitutes sufficient evidence of prevailing market rates in the District of Columbia applicable to Vaccine Act cases? Here Petitioner proffered the Laffey Matrix, an official schedule of fees published and endorsed by the United States Attorney's Office. But the Laffey Matrix, just looking at the Laffey case itself, it was a 13-year litigation with multiple appeals. It was very complex litigation. This was a table case which suggests that it was not in that category that would require complexity or the Laffey Matrix. Your Honor, I have a number of responses to that. First of all, Your Honor is absolutely correct. Laffey was extremely complicated, but over the years what has happened in the District of Columbia is best expressed by Mr. Resnick's, the respondent's witness, who says in his declaration, which we both sides cite in the briefs, that Laffey Matrix has become the default murder for all federal fee-shifting litigation in the District of Columbia. And in fact, that is really uncontroverted. And when you look at not just their evidence, but all the cases that have been decided over the years, we find that the Laffey Matrix is applied in a wide variety of cases, some of them, I think, by no one's standard to be complex. Are you basically suggesting that vaccine cases should adopt Laffey Matrix as the standard for awarding treats? No, Your Honor. What we're suggesting is very close to that, but that we're suggesting that it is when proffered prima facie evidence of the prevailing market rate applicable to Vaccine Act cases, because this is the Forum District, and that's the Forum District rate. So, basically, the trial judge then would either have to apply the Matrix or explain why it was not applied? Yes, why the prima facie case was rebutted, why it wasn't sufficient in this particular case. It's more than just a factor that could be looked at. It's a shit set of prima facie standards? Yes, Your Honor. That is what we have argued, that it is prima facie evidence of the prevailing market rate in the Forum District. And getting back to the Chief Judge's question, we see that it is applied in a wide variety of cases. I've cited some of them in my briefs. They include cases in which there are litigation over unpaid wages for two individuals under the Fair Labor Standards Act, suit for injunction against prospective violation of two teachers' free speech rights, a civil rights suit based on the refusal of taxi cab service in the District on a single occasion, a case in which there is a default judgment arising from a claim of unpaid wages. And that was a Lafayette Matrix case from just last year. So when we talk about... Why would... The Special Master here made comments that suggested this would be the highest rate she'd ever seen and that it would be more appropriate to look at the comparison of other rates she's had in a multitude of other cases. Why isn't that experience an important part of this equation? Your Honor, if we look at the Walmsley case, the Special Master in Walmsley came to an opposite conclusion as to the Special Master in this case. And Special Master Abell analyzed that and found, and I say this with all due respect to the Special Master in this case, that that was simply unpersuasive because that particular Special Master had no particular experience in setting attorney fee rates in the District of Columbia. This Special Master has never, up until this case, actually litigated, actually adjudicated an attorney fee case in which the prevailing market rates were at issue. In every other case, they were simply given. But between the Court of Federal Claims and the Special Master, there are over 70 pages of analysis of just this issue. And you're telling us it's all wrong. It is all wrong, Your Honor, and I believe we've gone through it in our brief slide. Let's move from the Laffey Matrix to what the Special Master actually relied on here because I think it's plainly insufficient, and we're going to see why if we look at it carefully. First, she looked at the Flannery case, and the Flannery case is the only Vaccine Act decision awarding fees to a District of Columbia practitioner. By the way, I might mention that according to Martindale-Hubbell, there are 41,000 attorneys in the District of Columbia, and the Vaccine Act has been in place for over two decades, and there has been only one fee award to a District of Columbia practitioner, and that is in Flannery. And in that case, there was no showing of prevailing market rates whatsoever. That's apparent from the face of the decision. There are two declarations supporting the rate in that case, and both of them said the rate is totally acceptable and reasonable, not proof of prevailing market rates. Then the Special Master looked to negotiated rates for Professor Myers, a non-profit law That's it for D.C. sources in all the two decades plus of Vaccine Act litigation. Then she looked to non-D.C. forum sources. The Carr case, in which Special Master Golkowicz said quite clearly this decision cannot be used or interpreted as evidence for attorneys outside of the Boston community, and any precedential value of this decision is restricted to the named attorneys. The Special Master's reliance on Carr is entirely unwarranted given what Special Master Golkowicz said in the Carr decision. And then we have negotiated rates for another attorney, Mr. Shoemaker, who testified in his declaration that these rates were negotiated under economic duress and did not reflect prevailing market rates. So that when we look at what the Special Master actually relied on here, we see that the It simply can't match up. Would it be fair to say that there is no prevailing rate for vaccine cases in Washington, D.C.? Your Honor, it would be fair to say that there is no prevailing rate based on historical Vaccine Act awards, if that's what Your Honor is asking. What's the difference between the answer and the question? Well, what we would suggest is that the prevailing rate is the prevailing rate for federal litigation, whether it be refusal of taxicab service or something more complex that is routinely granted in the District of Columbia. In federal litigation, that is admitted to be the prevailing rate by the United States Attorney's Office for the District of Columbia, and that's published as rates that they will accept and not oppose. And let me just suggest that those rates are actually very close to the rates that we have in big cities such as Manhattan, New York, where Mr. McHugh is from, and the Central District of California in which I practice. My rate is $4.75 an hour. That's in the record. Mr. McHugh's is $4.50 an hour. That's in the record. And the Lafayette Matrix rate is $4.65. In this case, we have the bizarre, the anomaly that when I stop working on another federal civil case and switch to this case, my rate goes down $200 an hour automatically. The same thing for Mr. McHugh. It goes down about 25% automatically. And we're not in-office attorneys. We're not junior lawyers. And we're not incompetent lawyers. So let me suggest that when we look at what the special master actually relied on here, it fails the substantial evidence test. It simply does not amount to substantial evidence of prevailing market rates in the forum district. Most of it is outside the district, and there are only two in-district rates. And they're unreliable because one of them is negotiated and is for a nonprofit clinic, and the other, the case, the special master who decided that case said it can't be used elsewhere. It applies only to the Boston community and only to these named attorneys. So we have insufficient evidence. Now, when we look at the evidence that was proffered and we concentrate on the Lafayette Matrix, we see, as I said, that it is applied not only in cases such as Lafayette itself, which was highly complex, but in a wide variety, a wide range of cases. And I could go on about that, Your Honors, but I think I've made the point sufficiently. Is the test arbitrary and capricious? The test is arbitrary and capricious for fact-finding, but if there is an error of law, as there was in this case, then the question is, then it's a legal question. Could you come back to one point I haven't heard you address, and that is this isn't very complex litigation. Oh, I think that's not quite true, Your Honor. I think it's highly complex. And let me just say, I have been a lawyer for 28 years. I've practiced in a wide variety of areas. This is as complex as anything. As the court in Monteverde said— But would you accept that attorney fee rates could vary based on the complexity of the litigation? Of the particular litigation within a field? I'm not quite sure what Your Honor is asking. I'm saying if a case is an easy slam-dunk case, maybe it doesn't get $800 an hour, even if it is handled by a senior attorney. No, I think that that's in conflict with what the Supreme Court has said in this area. What the Supreme Court has said, most recently in Purdue and in Blum v. Stenson, is that the attorney rate does not depend on the complexity of the case, of the particular case. It simply doesn't. It's the prevailing market rate for attorneys of that type. For example, in patent litigation, which this court is quite familiar, arbitration is encouraged. No one would suggest that because attorneys, perhaps the attorneys in the previous case, took their case to arbitration as opposed to going in front of this court, that therefore their rate should be slashed 40% to 25% or any degree. The advantages of that streamlined procedure, Your Honor, are in the lower number of hours, not the skill of the attorney that he or she brings to the case. And the same thing is true in Vaccine Act litigation. In cases like this one, where we started out as a Table Act case, but the government refused to accept that, and the special master refused to accept that, and we had a full hearing with competing experts on both sides, who had to be prepared, who had to be examined. Then we had post-hearing briefing. No one would suggest that that was uncomplex litigation. So attorneys in a vaccine case should get the same rate, regardless of whether the case is simple or complicated? The same rate, Your Honor, not necessarily the same compensation. If I litigate a case that should take 100 hours, and I do it in 200 hours, the court should take that into consideration. But that doesn't mean that my hourly rate should be less. It's a question of the number of hours. That's where the complexity comes in. So the complexity doesn't affect the rate if the attorney acts competently and efficiently? Yes, Your Honor, that's correct. The prevailing market rate is the prevailing market rate. It's an objective standard that attorneys in the courts can look to, and that's why the Supreme Court has endorsed it. Do you want to save your rebuttal time, Mr. Gaynor?  Thank you. Mr. Wisher. May it please the Court. I'm Darrell Wisher, and I'm here today on behalf of the Secretary of Health and Human Services. We request that your Court affirm the decision of the Court of Federal Claims in this case. As Judge Bloerig alluded to, the Special Master's determination here that the forum rate for Petitioner's Counsel was based on an exhaustive review of the evidence after applying the law, specifically the Apera case and the Blum case as well. And the Special Master also performed a thorough analysis of both the evidence and the law in supporting her conclusion that the Laffey matrix was not prima facie evidence of the forum rate for vaccine act cases. In reaching both of these conclusions, she did not err, she did not abuse her discretion, and she stated rational reason and thoughtful consideration and explanations based upon the evidence of record. Mr. Gaynor says that the Laffey matrix has become the default measure of attorney fees in, I think he said, federal litigation. He extended it quite broadly. Do you accept that characterization? Don't necessarily accept it totally. It's within the discretion of the trial judges. The District of Columbia have held in several cases that have not accepted the Laffey matrix, which are cited in our brief, the Muldrow case, the Clark case, several other cases. It's within the discretion. And it's our contention that based upon the streamlined procedures from the vaccine program, the lack of depositions and discovery, the fact that there's no rules of evidence. In contrast to what Mr. Gaynor's response to that is that the rate shouldn't change, the streamlined procedure would just hold the hours down, and so the compensation will be less because it's a streamlined procedure, but the rate of the attorney should not be affected by that complexity factor. I disagree with that as well. I think that the rate needs to be based on the services provided, and it needs to be based on the Lodestar, as your Court has held in Avere and Blum, and it needs to be the form rate. And in this case, the form rate is not, the evidence does not support the fact that the form rate should be the Laffey matrix because of the lack of complexity in many vaccine cases. At times, the issues are complex in vaccine cases, but the procedures for attorneys themselves are streamlined. As Mr. Gaynor alluded to, I've been practicing for 20 years. I've practiced both outside of the program and inside, and I've done litigation outside of the program. The vaccine program is very unique in the fact that you don't have to deal with rules of evidence with experts. You don't have to deal with discovery depositions with experts, and it's an example in this case. From the time that the petition was filed until the time that the hearing… But aren't you dealing with scientific evidence, evidence of illness, causation, and expert testimony? You are in some cases, absolutely, Your Honor, and what happens in the vaccine program is that there are burdens of the rules of evidence. Special masters can ask questions of experts. Expert reports come in. Medical literature comes in. All that information comes in because of the lack of rules of evidence, making the job of the attorney actually easier than the complex federal litigation that Laffey is applied to, and Laffey was to begin with, and is applied to generally within the district courts of the District of Columbia. So a judge could take into account the Laffey matrix if he or she wanted to? I believe it's a discretionary matter. In this case, the judge found that the Laffey matrix did not apply as prima facie evidence. Walmsley was alluded to. Walmsley, the judge, said that it did. We would contend that Walmsley is only a special master decision. Obviously, it holds no precedent here. The Walmsley case is a bit different in this case for several reasons. The evidence in our case is we have more evidence in our case than we did in the Walmsley case because the special master here actually ordered the parties to file additional evidence regarding the foreign rate issue. And it's noteworthy, too, because the respondent really has no burden of proof regarding fees. Its petitioner's burden of proof regarding proving reasonable fees and the amount of reasonable fees. So in this case, the special master did order the parties to submit additional evidence. We did so in this case. She did not accept the evidence that was provided by petitioner's counsel, and, in fact, they did not meet their burden of proof. Therefore, she had to look for other evidence. So in determining fees, the judge could ignore the matrix, could consider it as prima facie evidence and either apply it or not apply it, or could just consider it as a factor. Any of those approaches would be okay? In this case, the special master actually, in the second step, in determining what reasonable foreign rates would be, even though she rejected the Lathy matrix as the prima facie evidence, she looked at the Lathy matrix as well as one potential factor. But after reviewing that, she decided that it was not a factor that she would rely on in setting the foreign rates here. So I think it would behoove the special master to consider any evidence that's presented. If the Lathy matrix is considered in any case, he or she should consider it. However, here, she considered it and rejected it. What advice would you give to this court in setting attorney fee policy here? Whatever we say in this opinion could be construed as a rule applying in all future cases. What role should we give to the Lathy matrix? Well, Your Honor, my advice would be that, based upon the policy arguments that have been made by Petitioner's Counsel, there's really no policy basis to change what has happened. Section 15E1 of the Act seems to be working. Your court set the standard in AVERA that did away with the hometown rule, which obviously the government supported that throughout AVERA. But your court has now set the foreign rate. But we don't think that the Lathy matrix is the applicable measure or benchmark for foreign rates for attorneys in the vaccine program. There's no really good policy argument to change what the law is at this point in time. If the law is not working, our contention would be that Congress is the appropriate authority to make changes, perhaps setting up some type of fee schedule under the statute. So you seem to be saying just there are no rules, leave it to the discretion of the judges, whatever the factors may be, and each judge's mind will be fine. Well, it's our contention that there's no good basis under the laws that exist to say, for this court to say, that Lathy matrix is the prima facie evidence of the foreign rate. There's no good policy argument either, based upon the fact that it seems to be working. Petitioner's Counsel, there's no shortage of Petitioner's Counsel in the  There's been no evidence presented here of any shortage of Petitioner's Counsel in the program. And it seems to be working. And we're trying to deal with Avera. We're trying to, certainly the Lathy matrix would be the easy way to do it, Your Honor, but it's not the right way under the law, under Section 15A1 of the Act. Avera's expressly left open the question of what role the Lathy matrix should play, didn't it? It did, Your Honor. And doesn't that sort of beg for some sort of answer to that question as to what role it should play? Well, it certainly leaves the door open, that's for sure. And there was a panel argument here last month, I don't think in this courtroom, but a different courtroom, where a similar issue, the Macias case, where a similar issue was raised by Petitioner's, a bit different because Petitioner there was from Cheyenne, Wyoming, and it would be a situation where the Lathy matrix, arguing the Lathy matrix should be applied in general, but in the end, the case is a bit different because of the Davis exception, which is acknowledged under Avera, would apply because of the significant difference between the local rate versus the foreign rate as alleged. I want to talk just a little bit about the evidence that the Special Master looked at here, because Petitioner's counsel alluded to the fact that it was insufficient. The first point here is the Petitioner has the burden of proof, and simply put, the Petitioner here failed to meet his burden of proof. Thus, the Special Master was appropriate to look at respondent's evidence and other evidence, which she's allowed to do under the Vaccine Act, as long as she makes it part of the record, per decisions from the Courts of Federal Claims. In short, there was more evidence here in this case than there were in other cases that had been coming up the pike in terms of foreign rates, the Macias case being one, and the Wamsley case as cited by Petitioner's counsel. Special Master here, as I stated, considered Lathy, but she rejected it as insufficient evidence at a reasonable hourly rate. She looked at Professor Meyer's rate, which is one of the only two attorneys practicing in the District of Columbia that we have record of that provides services to the vaccine program, but found that his rate was, gave his rate little weight because of the fact that he practices in a clinic setting. Special Master considered Petitioner's Exhibit O, which was a National Law Journal survey for D.C. rates, but found it to be not persuasive on the issue. She did look at the Flannery order, which was $300 per hour in 2004 for a D.C. attorney who had a great deal of experience in complex federal litigation, 35-plus years with stellar legal skills. She then used that evidence and applied the information filed by both parties in this case on the COLA to basically come up with what a reasonable foreign rate would be at this point in time for a petitioner with comparable skills. She also looked at the evidence from the Conway firm and the Shoemaker firm. She considered these to be negotiated rates for a Boston firm and a Vienna, Virginia firm with a heavy vaccine practice and similar years of experience of Mr. McHugh. And these rates basically fell in line into the $300 to $330 per hour range for the relevant time period that we're talking about here. And that's, again, similar to what the special master did in the Macias case. And based upon that, she determined a foreign rate based upon that evidence, which was consistent with the evidence and following the law. And in this case, she found that the foreign rate was lower than the requested local rate and found the foreign rate for Mr. McHugh and Mr. Gaynor appropriately. The range of rates is also consistent with the several cases that have been cited in our brief, the Muldrell case, the Clark case, and the Avogadro case, in terms of range of fees for similar attorneys of experience with the same experiences as these gentlemen here for non-complex federal litigation. There's one additional case that I found since we filed our briefs. I'd just like to provide that site for what it's worth. It is the Laborer's International Union case. It is a District Court of D.C. case dated October 25, 2010. It's at 2010 Westlaw 426-0899. And that case involved an arbitration award and a construction dispute. In that case, the court stated that the LAFI applied to complex federal litigation, but in that case, the court said that the litigation was not complex. Most of the rates sought by the attorneys in that case were below the LAFI rate, but there was one attorney in particular whose rates were higher, and in that case, the court lowered the rates below LAFI. Mr. Wishart, you mentioned a couple of times this Macias or Macias case. I assume that hasn't been decided yet. It has not been decided. It was Judge Bryson, Judge Probst, and Judge Shaw last month. Do you believe the result of that case should influence this? There was one similar issue, as I stated. One of the issues that was brought up is whether the LAFI matrix should apply as the benchmark or the primary facial evidence of the form rate. So in that regard, obviously, if that case was decided before yours, obviously it would be something that we'd consider. However, during the argument itself, there was some conversation as to whether or not that panel would even have to reach that decision because of the fact that there was a very significant difference between what any type of form rate would be and what Mr. Moxley, in that case, his local rate in Cheyenne, Wyoming. So it's a bit different than what we have here. In short, the special master's decision here regarding the rate that she arrived at for the form for these gentlemen is appropriate and is supported by the evidence based upon the years of experience, the work that was performed, and the appropriate factors. She followed the law and acted within her discretion as set forth by your court for special masters that special masters have broad discretion in determining fees based upon Saxton. And thus, we would ask that you affirm the decision of the Court of Federal Claims upholding the special master's decision here. Thank you, Mr. Wisher. Mr. Gaynor, you have two and a half minutes remaining. Thank you, Your Honor. First of all, the concession by the respondent's expert that the Lafey Matrix is the default norm in federal fee-shifting litigation in the District of Columbia is at A. 324. I want to talk just very briefly, because I only have a very short time, about the practical consequences of affirming the Court and the special master in this case. We are getting into a very anomalous area if that's done. For example, this special master in a case called Schuman v. Secretary of HHS decided after the briefing of this case, on August 10th, I believe, of this year, considered the claim of an attorney from Huntington, Vermont, small-town Vermont, and determined at page 8 of that decision that under her grid, which is the same grid that she applied here for attorney fees in Vaccine Act cases, there was no substantial difference in market rates between the District of Columbia and small-town Huntington, Vermont. An anomalous result, I would imagine, in the eyes of most attorneys and judges familiar with practice in either area. If the special master is affirmed here, there is effectively a nullity. It can't be applied, because there is no way of measuring the prevailing market rate, according to the special master's interpretation of Avera, other than by looking not only to the District, where you only have two examples out of more than 20 years of litigation, but elsewhere, and looking only to Vaccine Act cases, and falling into the micro-market fallacy, which has been rejected by most federal appellate courts, including the Third Circuit, the Ninth Circuit, and the District of Columbia Circuit, in Student Public Interest Group, Van Syk, and Covington. Those courts say, and this court should too, that defining the prevailing market rate- Mr. Gaynor, you've told us twice now about Mr. Resnick's comment that this is a default rate. What he actually said was this is a default rate born out of vast dissatisfaction with fee litigation problems. He didn't really say it was a default rate for all federal litigation. He was commenting more on it's a default caused by distresses and overexertion. The weariness, I think, was the word of fee litigation. That's a little different from saying it's the default for all federal fee-shifting litigation. Your Honor, I think that what he was saying was reflecting the actual practice of the District of Columbia Courts, the District Courts, which routinely apply the Laffey Matrix in federal fee-shifting litigation of virtually every description in the District of Columbia District Court. That is what Mr. Resnick was recognizing, and that is, in fact, the reality. He goes on to say, I would have never dreamed that this is what my efforts would have wrought. What we hear is not the resounding endorsement of the Laffey Matrix that you seem to suggest. It seems more to be an introspective commentary on the weariness of fee litigation, which I think I can understand. Your Honor, if the Court is truly concerned about the excess of fee litigation, as it should be, it might note and take advantage of the Vaccine Act petitioner's I'm just concerned about your characterization of something, which seems to be a little out of the context of what the expert actually said. Your Honor, this is a defense declaration. And as lawyers routinely do, they look through the evidence of the other side, and they look at it carefully. And I looked at it carefully, and I found the following sentence. It is my sense that Laffey has become the default norm out of inertia, born from weariness with fee litigation and the lack of assistance. But the overall sense that he's giving is that he's dissatisfied with the whole system, even his contribution to it. He's not endorsing the Laffey Matrix. He's saying it's part of the problem, not part of the solution. Your Honor, Mr. Resnick. It seems to me you're twisting that back a little against him. Your Honor, I do believe that this is properly used to support our view and not the government's view. What Mr. Resnick has recognized, however reluctantly, is the reality of litigation in the District of Columbia Federal District Courts. He's recognized that it has become the default norm. He himself is not happy about it. And perhaps he doesn't have to be. We're not here to assure his happiness or not. And he may have been reluctant, but he said it. And it's the reality. It is the default norm. And if it's not given in this case, and the court doesn't recognize it in this case, then what's going to happen is results like this case where my rate when I work on one case is 475. A final comment for us, Mr. Gaynor? Pardon me? A final comment for us? Your time has expired. I'm sorry, Your Honor. I'm just asking you to give me your final comment. Yes. Your Honor, I will. If the court affirms in this case, the court will render the Avera decision a nullity. Because what is demonstrated by this decision is that the special masters are reluctant and won't apply Avera to find a prevailing market rate applicable to Vaccine Act cases unless they do so using the micromarket fallacy, tautologically looking only to prior vaccine cases.